IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
    Plaintiff,

vs.                                                               CR 17-03057 WJ

HECTOR CEBALLOS-CEBALLOS,
    Defendant.

### DEFENDANT HECTOR CEBALLOS-CEBALLOS' SENTENCING MEMORANDUM AND REQUEST FOR A SENTENCE AT THE LOW END OF THE AGREED UPON SENTENCING RANGE

COMES NOW, defendant, Hector Ceballos-Ceballos, by and through his counsel of record, Erlinda O. Johnson, Esq., and hereby respectfully moves this Honorable Court pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and 18 U.S.C. § 3553(a), for a the imposition of a sentence at the low end of the sentencing range, pursuant to the agreement of the parties under Fed.R.Crim.P. 11(c)(1)(C), and as reasons therefore submits the following:

    1.    On April 24, 2017, Mr. Ceballos and his wife, co-defendant Veronica Rodriguez, was arrested for conspiracy and possession with intent to distribute a quantity of cocaine and charged in the Second Judicial District Court in Bernalillo County, New Mexico.

    2.    On November 1, 2017, a federal grand jury issued an indictment charging Mr. Ceballos and his wife, co-defendant Veronica Rodriguez, with conspiracy to possess with the intent to distribute a quantity of cocaine, in violation of 21 U.S.C. § 846 and possession with intent to distribute a quantity of cocaine, in violation of 21 U.S.C. §§

1

841(a)(1) and (b)(1)(C). Mr. Ceballos was also charged with alien in possession of a firearm, in violation of 18 U.S.C. § 922(g) and possession of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The defendants were subsequently arrested and have remained in federal custody since April 10, 2018.

3. On August 10, 2018, Mr. Ceballos entered a guilty plea to conspiracy to possess with the intent to distribute cocaine, possession with the intent to distribute cocaine, and alien in possession of a firearm. According to the plea agreement, the parties agreed that a specific sentence of between 37 and 46 months is the appropriate disposition as to Mr. Ceballos.

## **INTRODUCTION**

Hector Ceballos-Ceballos ("Ceballos") is forty-three (43) years old. Pre-sentence report (PSR) p. 3. He was born in Guachochi, Chihuahua, Mexico to Isidro Nunez and Virgilia Ceballos. His parents never married. Mr. Ceballos describes his childhood as profoundly sad, filled with trauma, abuse and uncertainty. When Mr. Ceballos was just a boy, his father disowned him. When Mr. Ceballos was approximately ten years' old, his father left the family but the deep emotional and physical scars he had created from years of physical abuse against Mr. Ceballos and his mother remained behind.

Mr. Ceballos represents that after the abandonment by his father, he found solace in his loving and caring older brother who served as a father-figure for a young Hector. Mr. Ceballos' brother helped support him and was a positive role model for Hector. While young Hector continued to work to help support the family, his older brother assumed the majority of the family's financial obligations so that Hector did not have to work long arduous hours in the agricultural fields.

Tragically, Hector Ceballos' dreams were shattered one day in 1991[1] when his brother was unexpectedly killed during a fight between two other individuals. Mr. Ceballos represents his brother was hit by a stray bullet and died instantly. The passing of his brother had a profound and life-altering impact on Mr. Ceballos. He represents that since that time, he experiences severe anxiety as he sometimes fears losing his loved ones and represents he would do anything to prevent losing loved ones again.

In approximately 2002, after nearly a decade of floundering and feeling the profound sadness from the loss of the only father figure he had known, Hector Ceballos came to the United States, settling in Albuquerque, N.M. Mr. Ceballos was in search of a better life. Soon after arriving in Albuquerque, Mr. Ceballos fell in love and married Veronica Rodriguez. The union produced two children, ages 13 and 11. The children are United States citizens.

Mr. Ceballos represents that in 2003, he had finally found true happiness after years of devastating grief. He was working various construction jobs for subcontractors, albeit unlawfully as he was undocumented. He eventually landed a job with Bueno Foods. Unfortunately, he was forced to leave that job as he represents his boss would sometimes order him to work overtime but Mr. Ceballos would not get paid for the extra work. Given his lack of immigration status, Mr. Ceballos felt he could not report the exploitation. However, Mr. Ceballos did not let that negative experience deter him. He went back to work for sub-contractors and also began to buy inexpensive vehicles in need of repair. He represents he would repair them and resell them for a small profit. Despite

---

[1] While the PSR indicates, Mr. Ceballos' brother was killed in 2001, that appears to be an error as Mr. Ceballos advised his brother was killed in 1991.

the struggles, Mr. Ceballos represents he was happy as he finally had the family he yearned for when he was growing up.

Unfortunately, in 2016, Mr. Ceballos' construction jobs dried up and because of his inability to secure lawful immigration status, he found himself completely unemployed. At one of his darkest moments, Mr. Ceballos succumbed to an offer to sell street level quantities of cocaine on the streets. Mr. Ceballos' illegal venture, however, did not last long. In April 2017, he and his wife were arrested for possession with intent to distribute cocaine. Mr. Ceballos deeply regrets getting himself and his wife into the tragic situation in which they find themselves. Mr. Ceballos begs the Court to accept the agreement of the parties pursuant to Fed.R.Crim.P. 11(c)(1)(C) and impose a sentence of 37 months so that he is able to reunite with his family soon as he fears for their future.

**ARGUMENT**

**I.** *Mr. Ceballos' History and Characteristics Justify a Sentence of 37 months*

Since *United States vs. Booker*, 543 U.S. 220 (2005), a sentencing court must now impose sentence with full consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). In *Rita vs. United States*, 127 S.Ct. 2456 (2007), the United States Supreme Court explained, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *See* 127 S.Ct. 2456.

However, the Guidelines are not the only consideration. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the 18 U.S.C. § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, the sentencing judge may not presume that the Guideline range is reasonable. *See id* (emphasis added).

Additionally, in determining the appropriate sentence to impose, the Court should also consider the agreements of the parties and the reasons for reaching those agreements. A plea agreement is not simply a contract between two parties; rather, it implicates the integrity of the criminal justice system and requires courts to exercise judicial authority in considering the agreement. *United States v. Wood*, 378 F.3d 342 (4th Cir. 2004). "[C]ritical to a ... (C) agreement is that the defendant receive the ... agreed-to sentence." *Accord, United States v. Rivera–Martínez,* 607 F.3d 283, 286 (1st Cir. 2010); *United States v. Green,* 595 F.3d 432, 438 (2d Cir. 2010). If the Court accepts the parties' agreement, the only other matter pending will be the sentence the Court will impose, within the agreed upon range.

In addition to considering the agreement of the parties, the Court may also consider the factors under 18 U.S.C. § 3553(a), in determining the appropriate sentence within the agreed upon range. While Mr. Ceballos was convicted of serious offenses, his personal and family history reveals an individual who has tried to make right choices. He has been responsible, compassionate and caring. He worked honestly and tried to be a pillar of strength and support for his family. Unfortunately, his poor judgment to involve himself in drug trafficking activities now threatens the unity of the family he worked so hard to protect. He represents that words cannot express his deep remorse. A sentence of imprisonment of more than 37 months would adversely impact Mr. Ceballos' family, particularly his children. Given his lack of criminal history and awesome responsibility to care for and continue supporting his family, Mr. Ceballos respectfully requests this Court impose a sentence of 37 months.

## II. Mr. Ceballos' Case Merits a Sentence of 37 months Due to Exceptional Family Circumstances Pursuant to U.S.S.G. § 5H1.6

While a defendant's family ties and responsibilities are ordinarily not relevant, since *Booker*, a court may consider those factors as a basis for determining the appropriate sentence to impose. U.S.S.G. § 5H1.6. District courts are granted wide discretion in choosing which factors to rely on in determining whether the appropriate sentence to impose and may choose to rely on factors disfavored by the Sentencing Commission. *Gall v. United States,* 552 U.S. 38, 57-59 (2007); *United States v. Pinson,* 542 F.3d 822, 838-39 (10th Cir.2008); *United States v. Munoz-Nava,* 524 F.3d 1137, 1148 & n. 6 (10th Cir.2008) ("A factor's disfavor by the Guidelines ... no longer excludes it from consideration under § 3553(a).").

"[T]here may be extraordinary circumstances where family ties and responsibilities may be relevant to the sentencing decision." *United States v. Pena*, 930 F.2d 1486, 1495 (10th Cir. 1991). In fact, where family ties and responsibilities exist to an exceptional degree, it is proper for the court to depart downward from the applicable guideline range. *See United States v. Guavin,* 173 F.3d 798, 807 (10th Cir. 1999).

Since the *Booker, supra*, Court held that the Sentencing Reform Act which made the guidelines mandatory, 18 U.S.C. § 3553(b) are now advisory, the Court may now consider family ties and responsibilities as a basis for determining the appropriate sentence. The court has much more discretion to take the factor addressing extraordinary family circumstances into consideration in determining a reasonable sentence.

Mr. Ceballos' family circumstances justify the imposition of a sentence of 37 months, based on extraordinary family circumstances. He has always been responsible

6

for supporting his family. His wife is in custody and Mr. Ceballos hopes she will soon be reunited with the couple's children. However, Mr. Ceballos is expected to continue providing financial support and protection for the family. The family will have to relocate to Mexico, a place the children are not accustomed to visiting. If Mr. Ceballos is incarcerated for a period longer than 37 months, his young children will suffer greater psychological, financial and emotional hardship as Mr. Ceballos' wife may have difficulty providing financial support and in fully addressing the emotional issues the children have developed while their parents have been incarcerated. Given the extraordinary hardship that would result to the minor children from the prolonged incarceration of their caretaking parent, a sentence of 37 months based on extraordinary family circumstances is warranted. *See United States v. Rivera*, 994 F.2d 942 (1st Cir. 1993).

Here, Mr. Ceballos' case presents an extraordinary family situation which merits a sentence at the low end of the agreed upon sentencing range. If Mr. Ceballos is given a sentence of 37 months, he would soon be able to resume providing financial and emotional support for his family. The family will need a period of adjustment to their new life in Mexico. If Mr. Ceballos is incarcerated for a period longer than 37 months, the lives of his young minor children would be profoundly and adversely affected as he had developed a very close relationship with his children. Notably, a number of studies have suggested that there are profound effects on child development based upon parental arrest and incarceration.[2]

---

[2] *See e.g. Children of Incarcerated and Criminal Parents: Adjustment, Behavior and Prognosis* by Stewart Gabel, MD, available for download at http://www.jaapl.org/content/20/1/33.short; see also https://aspe.hhs.gov/basic-report/effects-parental-incarceration-young-children

7

Significant variances for circumstances similar to Mr. Ceballos' have been approved in numerous cases throughout the circuits. *See United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir. 1991) (departure upheld for defendant who worked two jobs to support his wife, two children, grandmother, and a disabled father who depended on defendant to get in and out of a wheelchair); *See also United States v. Johnson*, 964 F.2d 124, 129 (2d Cir. 1992) (departure upheld for defendant who was solely responsible for the upbringing of four young children); *United States v. Menyweather*, 431 F.3d 692, 700 (C.A.9 2005)( in $500,000 embezzlement case, no abuse of discretion for district court to depart 8 levels to probation in part because of unusual family circumstances were "Defendant's relationship with her daughter, and the care that Defendant provides, are unusual as compared with the situation of other single parents."); *United States v. Aguirre*, 214 F.3d 1122 (9th Cir. 2000) (within district court's discretion to depart downward 4 levels for extraordinary family circumstances "based on the fact that there is an 8 year-old son who's lost a father and would be losing a mother for a substantial period of time"); *United States v. Galante*, 111 F.3d 1029 (2d Cir.1997) (affirms district court's 13-level downward departure in drug case from 46-57 months to 8 days – where D showed he was a conscientious and caring father of two young sons who would have faced severe financial hardships ); *United States v. DeRoover*, 36 F. Supp. 2d 531, 532-33 (E.D.N.Y. 1999) (granting 12-level departure and 5-month prison sentence for single mother of five convicted of possession of about a kilogram of heroin based in large part upon the fact that elderly grandmother could not continue to care for the children and "[o]ne child suffers from 'separation anxiety' . . . . [and] has been under psychiatric observation"); *United States v. Chambers*, 885 F.Supp. 12, 14 (D.D.C. 1995) (defendant

is single mother with two children ages 12 and 15, incarcerating defendant for 15 years would deprive children of sole parent "that children need supportive and loving parents to avoid the perils of life is without question . . . causing needless suffering of young, innocent children does not promote the ends of justice").

Mr. Ceballos is deeply concerned and distraught about the uncertain future his children will face once they return to Mexico with his wife and Mr. Ceballos fears that alone they will have to adjust to life in a country with which they are hardly familiar. The fact that he will serve some time, be deported after the service of his sentence and will need to work hard to be reunited with his children and wife constitutes sufficient punishment.

### III. Hector Ceballos' History of Domestic Abuse Justifies a Sentence of 37 Months

It is important to note that in determining the sentence to impose in this case, this Honorable Court can consider Hector Ceballos' history of domestic abuse at the hands of his father. *United States v. Whitetail,* 956 F.2d 857 (8th Cir. 1992); *United States v. Apple*, 915 F.2d 899, 903 n.12 (4th Cir. 1990) (departure warranted where defendant was battered wife who suffered from chronic depression); *United States v. Gaviria*, 804 F.Supp. 476 (E.D.N.Y. 1992) (downward departure justified based on defendant being subservient to husband (battered woman); *See generally United States v. Lopez,* 938 F.2d 1293, 1298 (D.C.Cir. 1991); *see United States v. Deigert*, 916 F.2d 916, 918-19 (4th Cir. 1990); *see Penry v. Lynaugh,* 492 U.S. 302, 319 (1989) (evidence about the defendant's background is relevant because of the belief long held by this society, that the defendants who commit criminal acts that are attributable to emotional or mental problems may be less culpable).

As previously noted, Hector Ceballos was subjected to emotional and physical abuse as a child which eventually resulted in anxiety and low self-esteem. Hector Ceballos now reflects that his struggles with anxiety possibly resulted from abandonment issues. Mr. Ceballos represents that he suffered great anxiety when he feared not being able to support his family and losing them. This Honorable Court may consider the physical and psychological abuse Hector Ceballos endured as a child as a basis for imposing a sentence of 37 months.

### IV. *There are other Deficiencies in Imposing Prolonged Incarceration*

Mr. Ceballos will be deported after his term of incarceration, and there is case law to support a lower sentence because of this, and because of the more severe restrictions he will face in prison as opposed to citizens. *United States v. Szanto*, 2007 WL 3374399 (N.D. Ill. Nov. 8, 2007) (District court granted a downward variance on several factors. First the defendant was a minimal participant in the crime. Second, financial hardships were a motivating factor. Finally, he was a Canadian citizen and agreed to be deported. Court varied by 12 months and sentenced him to 24 months, time served.).

Non-citizens face more severe restrictions in prison than citizens because they do not get to benefit from the same programs and eligibility for early release like citizens. *See United States v. Navarro-Diaz*, 420 F.3d 581 (6th Cir. 2005) (illegal reentry case remanded in light of *Booker* where district court noted defendant would be punished more than a citizen due to ineligibility for six months half way house at end of term). This circumstance can be a mitigating consideration. *United States v. Davoudi*, 172 F.3d 1130 (9th Cir.1999) (ineligibility for minimum security designation of up to six months of home confinement authorized by 18 U.S.C. § 3624(c) can justify departure); *United*

*States v. Pacheco-Soto,* 386 F. Supp. 2d 1198 (D.N.M.2005) (deportable alien convicted of drug crime sentenced to 60 months, rather than minimum guideline term of 74 months, in light of his ineligibility for early release, minimum security prison, or credits for participation in residential drug or alcohol abuse program).

In the statement of Statutory Mission, the Sentencing Guidelines state that sentences are meant to "further the basic purposes of criminal punishment: deterrence, incapacitation, just punishment, and rehabilitation. Here, a sentence of 37 months provides adequate deterrence, incapacitation and just punishment. After *Koon* and *Booker,* the consequence of deportation obviously mitigates the amount of imprisonment necessary to punish. *See Jordan v. De George*, 341 U.S. 223, 232 (1951)(Jackson, J.)(deportation is "a life sentence of banishment in addition to the punishment which a citizen would suffer from the identical acts."). A sentence of 37 months is therefore "sufficient, but not greater than necessary" to achieve the purpose of sentencing set forth in 18 U.S.C. § 3553(a)(2), given the particular factors unique to Mr. Ceballos.

### V.     *The Defendant is Older and Presents Low Risk of Recidivism.*

Post *Booker* courts have noted that recidivism is markedly lower for older defendants. *United States v. Lucania*, 379 F. Supp. 2d 288, 297 (E.D.N.Y. 2005); *Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. 2005) ("Under the Guidelines, age was not normally relevant to sentencing. § 5H1.1. Post-*Booker*, however, at least one [c]ourt has noted that recidivism drops substantially with age."); *United States v. Nellum*, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005) (unpub.) (imposing non-Guideline sentence and noting that recidivism rate for defendants between the age of 41 and 50 with a criminal history category of III is less than half that of defendants under the age of 21).

As provided by the U.S. Sentencing Commission, defendants "over the age of forty . . . exhibit markedly lower rates of recidivism in comparison to younger defendants." *Measuring Recidivism: The Criminal History Computation Of The Federal Sentencing Guidelines*, at 12, 28 (2004) www.ussc.gov/publicat/Recidivism_General.pdf. ("Recidivism rates decline relatively consistently as age increases," from 35.5% under age 21 to 9.5% over 50).

The risk of recidivism is minimal, if not nonexistent in this case. Hector Ceballos is nearly forty-four (44) years' old. *See United States v. Ward*, 814 F. Supp. 23 (E.D. Va. 1993) (finding departure was warranted where the Guidelines failed to consider length of time defendant refrained from commission of first crime, and he was 60 years old). The likelihood Hector Ceballos will reoffend is extremely low and therefore he does not pose a risk of recidivism. The defense respectfully urges this Court to consider Hector Ceballos' age and the extremely low risk of recidivism and impose a sentence of 37 months.

Given the very low likelihood of recidivism in Hector's case, this factor should weigh heavily against imposing a sentence longer than 37 months, particularly given the cost of imprisonment. It would cost the tax payers $3,025.00 each month to imprison Hector Ceballos. Simply put, it is a waste of resources to incarcerate Hector Ceballos for a period longer than 37 months.

### VI. *Reasonableness of Sentence*

Since *United States vs. Booker*, 543 U.S. 220 (2005), a sentencing court must now impose sentence with full consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a). Those factors are:

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed--

> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(B)** to afford adequate deterrence to criminal conduct;
>
> **(C)** to protect the public from further crimes of the defendant; and
>
> **(D)** to provide the defendant with needed educational or vocational training,
>
> medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a).

**Nature and circumstances of the offense:** Mr. Ceballos is before the Court after convictions for conspiracy, possession with the intent to distribute cocaine and alien in possession of a firearm. His convictions stem from his role distributing small street level quantities of cocaine. Mr. Ceballos had absolutely no criminal history and a history of honest employment, albeit undocumented.

**History and characteristics of the defendant:** Mr. Ceballos submits that he has always strived to live life by the morals and values instilled in him by his mother and his late brother. Mr. Ceballos worked honestly for many years and has absolutely no criminal history. Now, he is facing permanent removal from the United States and separation from her children. Indeed, he is the only person on whom his children depend for financial support. Mr. Ceballos represents that the purpose of his existence is his family and being able to provide for them.

**The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense and to**

**afford adequate deterrence to criminal conduct:** Mr. Ceballos acknowledges he stands convicted of serious offenses. However, a conviction for a serious felony offense and the consequences that flow therefrom constitute just punishment for the nature of the charged conduct and to afford deterrence to criminal conduct.

**To protect the public from further crimes of the defendant:** Given Mr. Ceballos' complete lack of criminal history, he is not a danger to the community and very likely will not commit any other offenses.

**To provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner:** Any needed vocational or educational training may be accomplished with a sentence of 37 months. Since 18 U.S.C. § 3553(a) specifically states that the court shall impose a sentence sufficient but not greater than necessary to comply with the factors set forth above, Mr. Ceballos begs the court for a sentence of 37 months.

It should be noted that after *Gall supra*, courts of appeals have affirmed sentences as substantively reasonable when district courts have granted significant variances. *See, e.g., United States v. Thurston,* 544 F.3d 22, 23-26 (1st Cir. 2008) (on remand for reconsideration in light of *Gall*, affirming as substantively reasonable three months incarceration and two years supervised release for Medicare fraud of more than five million dollars, with guideline range of 63 to 78 months, a sentence the court had previously held to be substantively unreasonable); *United States v. McFarlin*, 535 F.3d 808, 809-12 (8th Cir. 2008) (upholding sentence of three years of probation to be "served" at residential facility, later amended to home detention, for conspiracy to distribute 102 grams of crack, where the guideline sentence was sixty months); *United*

*States v. Rowan*, 530 F.3d 379, 380 (5th Cir. 2008) (on remand for reconsideration in light of *Gall,* affirming in child pornography case sentence of five years probation where guideline range was 46-57, a sentence the court had previously held to be substantively unreasonable); *United States v. Pyles*, No. 06-4522, 2008 WL 920451 (4th Cir. Apr. 4, 2008) (same as to sentence of five years probation with six months of home confinement for drug offense with advisory range of 63-78 months).

While in this case Mr. Ceballos is not requesting a variance, he cites to the foregoing cases in support of a justification for the imposition of a sentence of 37 months, as a just and reasonable sentence.

WHEREFORE, for the foregoing reasons, Mr. Ceballos respectfully requests this Court accept the agreement of the parties pursuant to Fed.R.Crim.P. 11(c)(1)(C) and impose a sentence of 37 months.

Respectfully Submitted,

<u>Electronically filed 10/15/18</u>
Erlinda O. Johnson
Attorney for Hector Ceballos-Ceballos
620 Roma Ave. N.W.
Albuquerque, N.M. 87102
(505) 792-4048

I hereby certify that a true and
Correct copy of the foregoing was
e-mailed to AUSA Sammy Hurtado
via CM/ECF, on this 15th day of October, 2018.

_____/s/_____
Erlinda O. Johnson
Attorney at Law